# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

BENJAMIN YOCUM & HEATHER LTD, et al.,          Case No. 1:17-cv-850

    Plaintiff,

             v.                          Dlott, J.
                                 Bowman, M.J.

BLACK WOLF CONSULTING, INC., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit against multiple Defendants in state court on November 14, 2017. On December 18, 2017, Defendant Benefits Plan Administrators, Inc. ("BPA") removed the action to this Court, asserting that federal question jurisdiction exists under ERISA, 29 U.SC. § 1001, *et seq.* and 28 U.S.C. § 1331. On December 19, 2017, the Court referred this case to the undersigned magistrate judge in order to rule upon all non-dispositive pretrial motions, and to recommend disposition of all dispositive motions. (Doc. 5).

Currently pending is Defendant BPA's motion to stay proceedings in this case pending resolution of *Acosta, Secretary of Labor, United States Dept. of Labor v. AEU Benefits, LLC, et al.*, N.D. Ill. Case No. 1:17-cv-7931 (the "DOL Action") or further order from the court in that case. To the extent that this Court would decline to enter a stay, Defendant alternatively moves to dismiss all of Plaintiff's claims as preempted by ERISA, and for failure to state a claim for relief. (Doc. 11). For the reasons that follow, the undersigned recommends that a stay be imposed.

    **I.**    **Background**

This is a case in which a small business purchased what it assumed to be good

health care insurance coverage for its employees, and ended up greatly disappointed. As it turns out, Plaintiffs were not alone, a circumstance that led to the DOL Action.

Plaintiffs include a law firm and various individuals connected to that firm,[1] who participated in a health benefits insurance plan (the "Plan") for which Defendant BPA acted as the third-party administrator. Aside from Defendant BPA, Plaintiffs have named as additional Defendants: the Plan Administrator (SD Trust Advisors, L.L.C.), the aggregator (Black Wolf Consulting Inc.), the advisory services company (AEU Benefits, LLC), a John Doe Bermuda Trust allegedly holding and investing Plaintiffs' premium payments for the Plan, and John Does 1-5 who allegedly acted as "agents" for the Plan.

Plaintiffs allege that between December 1, 2016 and September 30, 2017, they paid premiums to Black Wolf Consulting for the Plan. (Doc. 4, Complaint at ¶13). During the same period, they incurred medical expenses, relying on the insurance coverage of the Plan. (*Id.* at ¶15). Plaintiffs submitted their claims for payment to BPA, who assured Plaintiffs that the claims were being processed. (*Id.* at ¶¶16-17). Plaintiffs allege that "many of these claims were not processed, or were allegedly processed but benefit payments were not made per contract (e.g. failure to pay after exhaustion of deductible by the participant)." (*Id.* at ¶ 17). Plaintiffs allege that more than $97,000 in total unpaid claims have been submitted to BPA. (*Id.* at ¶ 19). Plaintiffs allege that they have been damaged financially due to the unpaid claims, including damage to their credit ratings. (*Id.* at ¶¶20, 21). In addition, Plaintiffs allege that they have not been provided

---

[1] The undersigned takes judicial notice of the fact that the law firm of Benjamin, Yocum & Heather, LTD. d/b/a Benjamin, Yocum & Healther LLC a/k/a Benjamin, Yocum & Heather, a limited liability company, appears to have a new name following the departure of Tom Yocum. The new firm name is listed as Benjamin, Heather, Iaciofano & Bitter, LLC.

with the "proper paperwork and information" such that they could obtain deductible "credits" with their new health insurer, from whom they obtained coverage starting on October 1, 2017.   (*Id.* at ¶22).

Plaintiffs' complaint sets forth seven causes of action against all Defendants, pleading all claims collectively without differentiation among the Defendants.  Although Plaintiff includes a factual allegation that the law firm entered into a contract with "Defendants [sic] BPA, whereby BPA was to administer the [Plan]," Plaintiffs allege that <u>all</u> Defendants "are in breach of contract by their actions and inactions as pled herein, including, but not limited to, failure to timely pay and/or process claims as submitted." (*Id.* at ¶26).   Plaintiffs also allege that they are either "in direct contact [sic] with Defendants and/or are intended third party beneficiaries of Defendants who are in contract with each other, to provide health benefits and related services to Plaintiffs." (*Id.* at ¶ 24).

In Count II, Plaintiffs assert "fraud," alleging that all Defendants promised "they would pay the benefits promised when they had no intention to do so."   (*Id.* at ¶ 30). Count III, for misrepresentation, alleges that all Defendants "supplied false information …and made affirmative false statements to Plaintiffs about their [Plan], coverage and timely processing of claims." (*Id.* at ¶34).   Count IV alleges "unjust enrichment" based upon Plaintiffs' payment of premium funds to "Defendants" although they earlier allege they paid premiums only to Black Wolf.   (*Id.* at ¶¶11, 38-40).   Count V asserts civil theft, based upon Defendants' retention of Plaintiff's premiums without providing services. (*Id.* at ¶¶41-45).   Count VI alleges that all Defendants had a fiduciary relationship "with respect to Plaintiffs and the handling of their [Plan]."   (*Id.* at ¶47).   Last, Count VII

asserts bad faith based upon all Defendants' alleged refusal to pay and process Plaintiffs' claims. (*Id.* at ¶¶49-52). Plaintiffs seek compensatory damages in the amount of a return of their premium payments, and/or their unpaid claims and related ongoing damages, treble damages on the compensatory sum, punitive damages, interest, and attorney's fees.

Plaintiffs filed their case in state court on November 14, 2017. Less than two weeks earlier, the Secretary of the United States Department of Labor filed a federal complaint against many of the same Defendants in the Northern District of Illinois, alleging multiple breaches of ERISA by Defendants AEU Holdings, LLC, AEU Benefits LLC, and Black Wolf Consulting in the operation of a multi-employer welfare arrangement ("MEWA") to provide health and welfare benefits for employer-sponsored ERISA-covered employee benefit plans ("Participating Plans").[2] The Plan that Plaintiffs purchased was among the Participating Plans that is the subject of the DOL Action.

The DOL Action alleges that the defendants improperly used the assets of the Participating Plans to pay themselves excessive fees and expenses, resulting in over $26 million in unpaid, processed claims, covering the time period of January 1, 2016 to October 2, 2017. (DOL Action Compliant at ¶7). Two third-party claims administrators, including BPA, are referenced in the DOL Action. Unlike Plaintiffs herein, DOL does not assert wrong-doing by those administrators, and neither is named as a defendant. Instead, DOL alleges that as of October 6, 2017, there were approximately $15 to $16 million of unpaid claims processed by Tall Tree Administrators, Inc., which served as the

---

[2]The DOL Action also names SD Trust Advisors, LLC "to assure that complete relief can be granted." (DOL Complaint at ¶19).

AEU Plan's claims administrator from January 1, 2016 until December 1, 2016. (DOL Complaint at ¶68). After BPA took over from Tall Tree, unpaid claims continued to accrue, resulting in a total of $11,761,545.41 in unpaid claims administered by BPA as of October 2, 2017. (*Id.* at ¶84). Among other relief, the DOL seeks recovery of all monies due and owed to all Participating Plans for the payment of claims.

By the time the DOL filed suit, other plaintiffs (besides Plaintiffs herein, who filed suit *after* the DOL Action) were already pursuing claims against the same defendants in several courts. In part to preserve remaining assets, the DOL sought and obtained a preliminary injunction, which was first entered on November 15, 2017 – the day after the Plaintiffs filed suit in the Hamilton County Court of Common Pleas. The preliminary injunction includes a Stay Order that impacts the AEU Plan, all Participating Plans, and their participants who have suffered unpaid claims. On November 21, 2017, Plaintiffs gave notice of the Stay Order to the Hamilton County Court of Common Pleas by filing a Notice of Partial Stay, which Notice concedes that the DOL Stay Order applies to claims against Black Wolf, SD Trust Advisors, and AEU Benefits. (Doc. 1-3 at PageID 30). However, the Notice states that Plaintiffs' claims against BPA "are not subject to the Order and may proceed." (*Id.*)

Disagreeing with Plaintiffs' position, Defendant BPA has moved to stay proceedings in this case based on the Stay Order in the DOL Action. Despite conceding the applicability of the Stay Order to all other Defendants, Plaintiffs argue that they should be permitted to continue to proceed against BPA, because that entity is not a named defendant in the DOL Action.

5

**II. Analysis**

**A. The Broad Scope of the Stay Order in the DOL Action**

Pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651, and at the request of the DOL, the Northern District of Illinois entered a Stay Order which states, in relevant part that:

> All state and other federal court actions against the AEU Plan and Participating Plans and their plan assets, or against participants and beneficiaries for unpaid benefit claims incurred while a participant or beneficiary participating in the AEU Plan and payment for which the AEU Plan is likely responsible, whether filed by or on behalf of participants, participating employers, health care providers, collection agencies, or others, are hereby stayed and enjoined pending the final disposition of this action, or until further order of this Court.

(Stay Order at ¶1, Doc. 1-3 at PageID 33). The Stay Order excludes actions "between and among service providers," but only "to the extent such claims do not target or seek to recover plan assets of the AEU Plan and Participating Plans." (*Id.* at ¶ 9, PageID 35). Defendant BPA argues persuasively that this is not an action that is excluded from the Stay Order, because it is not "between and among service providers." Even though BPA might be deemed a type of "service provider," this case has been brought by plan participants who seek the recovery of plan assets to pay claims – precisely the type of action that is subject to the Stay Order.

Plaintiffs' argument that its claims against BPA may proceed, while the remainder of its case is stayed, is unavailing. The Stay Order does not apply only to piecemeal claims, but requires the stay of the entire "action." In any event, Plaintiffs' claims against BPA are inextricably intertwined with the admittedly stayed portions of their case.

Despite the lack of differentiation between the seven claims asserted and

damages sought collectively against all Defendants in their complaint, Plaintiffs now argue that its claims against BPA are "separate and distinct" from claims against the other Defendants. Plaintiffs maintain that BPA may be held separately liable for "multiple misrepresentations of fact to Plaintiffs, regarding the status of claims that had been presented to BPA for processing." (Doc. 12 at 1). In addition, Plaintiffs argue that their claims against BPA are based upon BPA's alleged failure to timely provide deductible credit information to Plaintiffs' new insurer, Aetna, causing "some" of the Plaintiffs to not receive full credit and be forced to satisfy a new deductible.

Despite this new characterization of Plaintiffs' claims, this litigation necessarily will "target" or "seek to recover" plan assets, (*see* Doc. 1-3 at PageID 35), insofar as Plaintiffs seek the recovery of their premium payments, and/or unpaid claims payments, along with other consequential damages that they allege have resulted from the failure to timely process and pay claims (such as the allegedly duplicate deductible amounts). Even if this Court were to view Plaintiffs' claims as somehow separate and apart, BPA states that it would still assert cross-claims against the AEU Defendants, Black Wolf, and AD Trust Advisors for indemnification and recovery of Plan assets sufficient to cover Plaintiffs' unpaid claims. As indicated in the DOL Action, BPA took over from Tall Tree as a third party claims administrator, but the various defendants identified in both the DOL Action and in this case failed to make payment and provide BPA with required funds to pay beneficiaries of the Participating Plans, including but not limited to the Plaintiffs in this case. If this action were permitted to proceed, BPA's cross-claims would clearly fall within the scope of the Stay Order. Aside from the applicability of the Stay Order to

7

Plaintiffs' claims in chief, it would be inequitable and overly prejudicial to force BPA to defend itself when its cross-claims would be stayed.

In short, I conclude that Plaintiff's claims against BPA fall within the scope of the existing Stay Order in the DOL Action.

### B. Alternative Basis for Stay

To the extent that this Court would engage in the mental gymnastics advocated by Plaintiffs and find that the Stay Order itself does not technically bar Plaintiffs' claims against BPA, despite barring identical claims against all other Defendants, this Court would still grant BPA's motion to stay Plaintiffs' claims against it based upon this Court's inherent authority to manage its docket efficiently. *See Gill v. Convergent Outsourcing, Inc.*, Civil Action No. 2:16-cv-01035, 2017 U.S.Dist. LEXIS 92286 (S.D. Ohio June 15, 2017).

In determining whether it is appropriate to stay litigation, the Court should consider the following factors: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Id.*, at *3 (quoting *Michael v. Ghee*, 325 F.Supp.2d 829, 830 (N.D. Ohio 2004)(additional citations omitted)). Here, all factors favor the imposition of a stay. The DOL Action, once concluded, will have a dispositive effect on the vast majority of Plaintiffs' claims in this case; (2) staying Plaintiffs' claims against BPA promotes judicial economy by waiting for a dispositive decision from the DOL Action; (3) the public welfare is served by staying Plaintiffs' claims against BPA pending resolution of the DOL litigation;

8

and (4) staying Plaintiffs' claims against BPA will not create a hardship to Plaintiffs, in part because the DOL action has been brought on behalf of beneficiaries such as Plaintiffs.

### C. Defendant's Alternative Motion to Dismiss

Defendant BPA's motion seeks two forms of relief. First and foremost, Defendant seeks a stay of all proceedings in this litigation pending the disposition of the DOL Action. That stay is granted by virtue of this Memorandum Opinion and Order. Only if this Court does not issue a stay does BPA alternatively move to dismiss all of Plaintiffs' claims as preempted by ERISA, and for failure to state a claim for relief.

The undersigned declines to reach BPA's alternative motion to dismiss based upon the finding that this case is subject to the Stay Order entered in the DOL Action, and/or should be stayed under the Court's inherent authority to manage its docket. Therefore, by separate Report and Recommendation, I recommend that the alternative motion be denied as moot without prejudice to renew once the stay is lifted.

### III. Conclusion and Order

For the reasons stated, **IT IS ORDERED THAT:**

1. Defendant BPA's motion to stay (Doc. 11) is **GRANTED**, pending disposition of the DOL Action or further order from that court;
2. To ensure timely notification, the parties shall update this Court every ninety (90) days of the status of the DOL Action.

                    *s/ Stephanie K. Bowman*
                    Stephanie K. Bowman
                    United States Magistrate Judge